[Civ. No. 16321.   Second Dist., Div. One.   Sept. 21, 1948.]

ESTHER HENSGEN, as Special Administratrix, etc., et al., Appellants, v. ROSE SILBERMAN et al., Respondents.

A. W. Brunton for Appellants.

Newton E. Anderson and Eldon V. McPharlin for Respondents.

YORK, P. J.—The instant action was instituted by Esther Hensgen, as special administratrix of the estate of Nicholas Carl Hensgen, deceased; Thelma Hensgen Neal, widow of decedent, and the two minor daughters of decedent and said widow, against Rose Silberman, the alleged second wife of decedent, to recover the proceeds of a life insurance policy, certain cash, bonds and other personal property acquired during the marriage of decedent and said Rose Silberman.

This appeal has been perfected by plaintiffs from a judgment in favor of defendant Rose Silberman, based upon findings of fact of the trial court to the following effect:

That Nicholas Carl Hensgen and plaintiff Thelma Hensgen Neal were married in 1928, in the State of Texas and separated in August, 1940, while residing in this state; that on December 12, 1940, said parties went to Tijuana, Mexico, where they conferred with an attorney and made the necessary arrangements to obtain a Mexican mail order divorce; that "thereafter the said Thelma Hensgen Neal was granted a purported final decree of divorce from Nicholas C. Hensgen, on December 17, 1940, by the Civil Court of First Instance, Bravos District, Chihuahua, Mexico." That on December 25, 1940, Nicholas C. Hensgen and Rose Silberman Hensgen were married in the State of Nevada and at all times thereafter until the death of Nicholas on December 24, 1945, they lived together as husband and wife. "That said Rose Hensgen entered into said marriage and thereafter lived with Nicholas C. Hensgen as husband and wife in good faith and under the bona fide belief that said marriage was valid."

That on April 11, 1941, said Thelma Hensgen Neal married Walter A. Smith in the State of Nevada, "with whom she thereafter continued to live as husband and wife for not less than two years and four months; that on February 1, 1946, she obtained a decree of divorce in Nevada from said Walter A. Smith; that on the same date, February 1, 1946, said Thelma Hensgen Neal married a Mr. Neal to whom she is now married. . . .

"That the said Thelma Hensgen Neal had full knowledge of the marriage of Nicholas C. Hensgen and Rose Hensgen and that they were living together as husband and wife and were generally reputed to have been legally married; that the said Thelma Hensgen Neal, together with Walter A. Smith, visited the home of Nicholas C. Hensgen and Rose Hensgen on several occasions and that at no time prior to the death of Nicholas C. Hensgen did Thelma Hensgen Neal claim or inform Rose Hensgen of any alleged invalidity of said marriage; that the said Thelma Hensgen Neal at no time prior to the death of Nicholas C. Hensgen took any steps to have her own remarriage to Walter A. Smith set aside as unlawful; that the said Thelma Hensgen Neal at no time protested against the said marriage of Nicholas C. Hensgen and Rose Hensgen or their relationship as husband and wife; that over five years have elapsed since the granting of the Mexican decree of divorce and the remarriage of the parties until the commencement of this action. All of which was to the prejudice of defendant Rose Hensgen."

In accordance with such findings, the court decreed that Rose Silberman, also known as Rose Hensgen, is entitled to the proceeds of a certain life insurance policy in the sum of $6,993.50, now on deposit in the registry of the court; and that the following described personal property is the sole and separate property of defendant Rose Silberman, and that none of the plaintiffs has any right, title or interest therein:

(a) Joint savings account in name of Nicholas C. Hensgen or Rose Hensgen, at Bank of America, 7th & Spring Streets, Los Angeles, in the sum of $451.21;

(b) Joint savings account in name of Nicholas C. Hensgen at Metropolitan Federal Savings and Loan Association, Los Angeles, in the sum of $1,462.12;

(c) War bonds in name of Nicholas C. Hensgen or Rose Hensgen of the value of $1,668.75;

(d) Household furniture and furnishings, except for one Crosley Shelvador electric refrigerator, located at 2445 Corinth Avenue, West Los Angeles, California.

It was also decreed that plaintiff Esther Hensgen, as special administratrix with general powers of the estate of Nicholas Carl Hensgen, deceased, is entitled (1) to possession of that certain Crosley Shelvador electric refrigerator now in custody of Rose Hensgen; (2) to judgment against Rose Hensgen for the sum of $100 in lieu of the mechanics' tools disposed of by the latter, delivery of possession thereof being impossible; further, that plaintiff Esther Hensgen, as special administratrix, and defendant Rose Hensgen are each entitled to an undivided one-half interest as tenants in common in and to a 1939 Lincoln Zephyr automobile.

■ It is here asserted by appellants that, since the Mexican decree of divorce is illegal and ineffective, no estoppel arises against the first wife by reason of her subsequent remarriage under the circumstances here presented, and that estoppel as a defense to an action to recover community property is not available to the purported second wife, who had knowledge of the Mexican divorce.

In *Estate of Hensgen*, 80 Cal.App.2d 78 [181 P.2d 69], the same parties, Rose Silberman Hensgen and Thelma Hensgen Neal, each asserting to be the widow of Nicholas Carl Hensgen, claimed the right to administer his estate. In that case, this court held that the Mexican decree of divorce was a nullity; therefore, no rights could accrue to Rose Hensgen as widow, and that Thelma Hensgen Neal was not estopped to attack such void decree by reason of her acquiescence therein.

It was there stated at page 80: "Appellant, however, contends that respondent Thelma Hensgen is estopped from attacking the validity of the former's marriage to decedent. We are not unmindful of the cases holding that a party may be estopped to assert the invalidity of a divorce decree secured by or acquiesced in by him (at least where he seeks by such assertion to secure property rights, as distinguished from a determination of marital status), even though such decree be void for want of jurisdiction. (*Harlan* v. *Harlan, supra* [70 Cal.App.2d 657, 660, 661 (161 P.2d 490)]; *Estate of Davis*, 38 Cal.App.2d 579, 585 [101 P.2d 761, 102 P.2d 545]; *Starbuck* v. *Starbuck*, 173 N.Y. 503 [66 N.E. 193, 194, 93 Am.St. Rep. 631]; *Brown* v. *Brown*, 266 N.Y. 532 [195 N.E. 186]; *Chapman* v. *Chapman*, 224 Mass. 247 [113 N.E. 359, L.R.A.

1916F 528]; *Querze* v. *Querze*, 290 N.Y. 13 [47 N.E.2d 423];
n. 122 A.L.R. 1321; 153 A.L.R. 941 (n); 17 Am.Jur. 575.)
Neither are we unmindful of the rule that where the question
in controversy relates to the property rights or pecuniary
interest of the parties as distinguished from their marital
status, the doctrine of estoppel is applicable under circum-
stances properly calling for its application. But the instant
proceeding is not of the character first above mentioned. This
is not a proceeding to determine heirship. It involves the ap-
pointment of an administratrix. The filing of a contest
squarely presented to the court the question of determining
the marital status of the parties claiming the right of appoint-
ment as administratrix, viz., who was the legal wife of dece-
dent at the time of his death? Any estoppel imposed upon re-
spondent Thelma Hensgen would not make valid appellant's
marriage to the decedent, and it was the validity of that mar-
riage that was before the court for determination. . . . Fur-
thermore, it might here be pointed out that respondent Thelma
Hensgen is not seeking through this proceeding to gain any
pecuniary benefit, as is evidenced by the fact that she has
nominated Esther Hensgen for appointment as administratrix,
and Esther Hensgen has pending in the probate court her
petition for appointment as guardian of the estates of the
minor children of the decedent and respondent Thelma Hens-
gen.''

In *Estate of Davis*, 38 Cal.App.2d 579, 584 [101 P.2d 761,
102 P.2d 545], the decedent urged respondent to go to Nevada,
establish a residence for the sole purpose of securing a divorce,
and then to marry him. He paid the costs and expenses of the
divorce and went to Reno and took an active part in the
preparation of the case, and married respondent on the day
the divorce was granted. Upon the death of Mr. Davis his
heir attacked the validity of respondent's divorce and subse-
quent marriage to Mr. Davis. The court held that because of
Mr. Davis' part in procuring the Nevada divorce decree for
respondent he would have been foreclosed from denying the
validity thereof or the subsequent marriage under the doc-
trine of quasi estoppel, and that his heir was in no better
position. In the cited case, the court stated: ''The accepted
rule, free from emotionalism, is found in 'Restatement of the
Law of Conflict of Laws,' sec. 112, as follows: 'The validity
of a divorce decree cannot be questioned in a proceeding con-
cerning any right or other interest arising out of the marital

relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying.'

"The California doctrine is based upon subdvision 3 of section 1962 of the Code of Civil Procedure, which prohibits a party from denying an act which he has deliberately led another to believe and act upon as true. Though ignorance of the truth is a primary essential on the part of one pleading an estoppel *in pais*, our courts have recognized another species of estoppel, called '*quasi* estoppel,' which is based upon the principle that one cannot blow both hot and cold, or that one 'with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another.' (10 Cal.Jur., p. 645; *McDanels* v. *General Ins. Co.*, 1 Cal.App.2d 454, 459 [(35 P.2d 394), 36 P.2d 829].) Another way of stating the same general principle (applicable directly to the instant case) is that one who has invoked the exercise of a jurisdiction within the general powers of the court cannot seek to reverse its orders upon the ground of lack of jurisdiction. 'The principle opposing such action is one of estoppel in the interest of a sound administration of the laws whereby the regularity or even validity of an act procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant. (*Spence* v. *State Nat. Bank,* (Tex.Com.App.) 5 S.W.2d 754.) The principle is known as the doctrine of acquiescence, often referred to as *quasi* estoppel.' (*Spohn Co.* v. *Bender,* 18 Cal.App.2d 447, 451 [64 P.2d 152].)''

While much of the testimony of the two wives is contradictory in many respects, nevertheless, it clearly establishes, as the trial court found, that at no time subsequent to the date of the Mexican decree, i. e., December, 1940, and prior to decedent's death on December 24, 1945, did appellant Thelma Hensgen Neal question or take any action to assert the invalidity of the Mexican divorce. She permitted respondent Rose Silberman to hold herself out as the lawful wife of decedent and to incur the benefits and obligations incident to a valid marriage. If, as testified by said appellant, decedent told her in 1943, that she was not legally married to Walter A. Smith because of the invalidity of the Mexican divorce, it was incumbent upon her to disclose such fact to Rose Silberman so that the latter could have taken steps to legalize her marriage

to decedent. Instead, said appellant Thelma Hensgen Neal failed to act and respondent Rose Silberman continued to live with her purported husband, caring for him as a dutiful spouse under the belief that she was validly married to him, working and pooling her earnings with his in order to contribute to their joint savings and to enhance what she was led to believe was their community property.

In view of the foregoing, upon the simplest principles of equitable estoppel, appellants cannot now be heard to question the validity of the Mexican divorce decree for the sole purpose of sharing in the property accumulated by decedent and respondent Rose Silberman during the years they lived together as husband and wife.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 18, 1948.