T.C. Memo. 2003-47

UNITED STATES TAX COURT

GLORIA M. STARK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9570-02L.          Filed February 25, 2003.

Gloria M. Stark, pro se.

<u>Charles J. Graves</u>, for respondent.


MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  Respondent has moved for summary judgment
on the question of whether respondent may proceed with collection
of petitioner's outstanding tax liabilities for tax years 1994
through 1997.

Summary judgment is intended to expedite litigation and
avoid unnecessary and expensive trials.  <u>Fla. Peach Corp. v.</u>

Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988).[1]  The moving party bears the burden of proving that there is no genuine issue of material fact; factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  When a motion for summary judgment is made and properly supported, the adverse party may not rest upon mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Rule 121(d).

As discussed in detail below, we conclude that there is no dispute as to any material fact and that respondent is entitled to summary judgment as a matter of law.

Background

On September 8, 1987, the Circuit Court for the County of Midland, Michigan, entered a judgment of divorce between petitioner and her former husband, Forrest Stark (the divorce

---

[1]  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended.

judgment).  The divorce judgment ordered, inter alia, that permanent alimony be awarded to petitioner in the amount of $1,000 per month.

Petitioner made several unsuccessful appeals to the Michigan Supreme Court regarding her divorce.  See Stark v. George, 489 N.W.2d 784 (Mich. 1992) (denying petitioner's application for leave to appeal an action against the attorneys who represented Forrest Stark in the divorce proceedings); Stark v. Midland Circuit Judge, 435 Mich. 877 (1990) (denying petitioner's application for leave to appeal and denying a motion "to disqualify a party"); Stark v. Stark, 432 Mich. 898 (1989) (denying petitioner's application for leave to appeal an action against Forrest Stark), motion for reconsideration denied, Stark v. Stark, Nos. 85431, 85, 85432, 83, 1989 Mich. LEXIS 1217; Stark v. Stark, 431 Mich. 877 (1988) (denying petitioner's application for leave to appeal an action against Forrest Stark).[2]

Petitioner filed a Federal income tax return for 1994 showing tax liability, but she did not remit payment for the reported liability.  Petitioner filed a Federal income tax return for 1996, but not for 1995 or 1997.

---

[2] On petitioner's Form 12153, Request for a Collection Due Process Hearing, dated July 12, 2000, petitioner contended that her divorce was invalid and stated that her "case is now in Federal Court."  We take judicial notice that on July 12, 2000, the United States Court for the Eastern District of Michigan entered an order granting the State of Michigan's motion to dismiss the action filed by petitioner in Stark v. Michigan, No. 00-CV-10066 (E.D. Mich., filed Feb. 23, 2000).

On June 21, 1999, respondent sent petitioner a notice of deficiency for 1995, 1996, and 1997, determining income tax deficiencies of $7,054, $6,305, and $6,711, respectively, plus additions to tax under sections 6651(a)(1) and 6654 for 1995 and 1997.  Petitioner did not petition this Court for redetermination.

On March 29, 1999, respondent assessed the unpaid tax liability reported on petitioner's 1994 tax return, plus penalties and interest.  On February 7, 2000, respondent assessed the income tax deficiencies and additions to tax, plus interest, as determined in the notice of deficiency for 1995, 1996, and 1997.

On June 15, 2000, respondent sent petitioner a Final Notice -- Notice of Intent to Levy and Notice of Your Right to a Hearing, regarding petitioner's 1994 through 1997 income tax liabilities.  On July 12, 2000, petitioner submitted to respondent a Form 12153, Request for a Collection Due Process Hearing.  On the Form 12153, the only issue that petitioner raised was whether payments received from her former husband were taxable to her as alimony.

On April 10, 2001, an administrative hearing was held between petitioner and respondent's Appeals officer (the administrative hearing).  On April 30, 2002, respondent issued petitioner a Notice of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330 (notice of determination) regarding petitioner's 1994 through 1997 tax liabilities. In the notice of determination, respondent determined that all applicable legal and administrative procedures had been met and that collection actions could proceed against petitioner. The notice of determination states: "The underlying tax liability is correct. You were divorced and the alimony payments received from your former husband are properly included into income."

On June 3, 2002, this Court received from petitioner, who then resided in Independence, Missouri, a letter which the Court treated as a timely imperfect petition for review of respondent's notice of determination. On June 26, 2002, petitioner filed an amended petition. In her amended petition, petitioner states that she "does not contest the tax owed or any additions to the tax for penalty or interest. The petitioner merely states that the IRS is billing the wrong person for the taxes owed for the years 1994, 1995, 1996 and 1997." She contends that the Midland County, Michigan, circuit judge who signed the divorce judgment had been "previously disqualified from making any further rulings between the two parties." Thus, she contends, there was "No legal divorce" and consequently "no alimony" to be included in her taxable income.

## Discussion

If any person neglects or refuses to make payment of any Federal tax liability within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on the person's property. Sec. 6331(a). At least 30 days before taking such action, however, the Secretary generally must provide the person with a final notice of intent to levy that describes, among other things, the administrative appeals available to the person. Sec. 6331(d). Upon request, the person is entitled to an administrative hearing before the Appeals Office of the Internal Revenue Service. Sec. 6330(b)(1). If dissatisfied with the Appeals Office determination, the person may seek judicial review in the U.S. Tax Court or a Federal District Court, as appropriate. Sec. 6330(d). Generally, the proposed levy actions are suspended for the pendency of the hearing and any judicial appeals therein. Sec. 6330(e)(1).

Section 6330(c) prescribes matters that a person may raise at an Appeals Office hearing, including spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. The existence or amount of the underlying tax liability may be challenged in the collection proceeding only if the person received no statutory notice of deficiency or otherwise had no opportunity to dispute

the tax liability.  Sec. 6330(c)(2)(B); see Sego v. Commissioner, 114 T.C. 604, 609 (2000).  If the underlying tax liability is not properly at issue, we review respondent's determination for an abuse of discretion.  Sego v. Commissioner, supra at 610.  Otherwise, we review the matter de novo.  Id.

The only issue petitioner has raised is whether payments received from her former husband pursuant to a disputed divorce judgment should be included in her taxable income.  Respondent argues that in the circumstances of this case, section 6330(c)(2)(B) bars petitioner from challenging her underlying tax liability.  We need not resolve this issue, however; as discussed below, even if petitioner were allowed to challenge her underlying tax liability, she would not prevail on the merits.  Cf. Young v. Commissioner, T.C. Memo. 2003-6; Horn v. Commissioner, T.C. Memo. 2002-207.

Under section 71(a), "Gross income includes amounts received as alimony or separate maintenance payments."  Section 71(b)(1) defines alimony as "any payment in cash if--(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument".  Petitioner argues that the payments she received from her former husband were not alimony because they were made pursuant to an invalid divorce decree.  She contends that the divorce decree was invalid because the Midland County, Michigan, circuit judge who entered it had previously disqualified himself from the case.

In effect, having failed to achieve satisfaction in her numerous appeals to the Michigan Supreme Court, petitioner seeks to relitigate her domestic relations dispute here.  We decline to inject ourselves into this Michigan domestic relations dispute.

Marital relationships are peculiarly creatures of State law. Lee v. Commissioner, 64 T.C. 552, 558 (1975), affd. per curiam 550 F.2d 1201 (9th Cir. 1977); see also Overman v. United States, 563 F.2d 1287, 1290 (8th Cir. 1977); Eccles v. Commissioner, 19 T.C. 1049, 1051 (1953), affd. per curiam 208 F.2d 796 (4th Cir. 1953).

Petitioner's divorce judgment was entered in Midland County, Michigan, on September 8, 1987.  Although petitioner has contested the validity of the divorce judgment, no State court has overturned it.  To the contrary, between 1988 and 1992, the Michigan Supreme Court rejected petitioner's several appeals relating to her divorce.[3]  Principles of collateral estoppel and full faith and credit counsel that we respect the State court judgments.  See Calhoun v. Commissioner, T.C. Memo. 1992-246 (declining to decide whether a New York divorce judgment was invalid as violative of due process where no New York appellate court had overturned, reversed, or otherwise modified the divorce

---

[3] Notably, in Stark v. Midland Circuit Judge, 435 Mich. 877 (1990), the Michigan Supreme Court denied petitioner's motion to "disqualify a party."

judgment), affd. without published opinion 993 F.2d 1533 (2d Cir. 1993).

The petition does not explicitly raise a request for equitable relief under section 6015(f). To the extent that the petition might be construed to raise such a claim inferentially, we hold that petitioner is not entitled to such relief, having failed to file a joint Federal income tax return for any year at issue. See Raymond v. Commissioner, 119 T.C. 191, 195 (2002).

Petitioner has failed to make a valid challenge to the appropriateness of respondent's intended collection action. She has raised no issue in this proceeding regarding any offer of an alternative means of collection.[4] These issues are now deemed conceded. Rule 331(b)(4).

Accordingly, we conclude that respondent is entitled to summary judgment as a matter of law. To reflect the foregoing,

An appropriate order and decision will be entered granting respondent's motion for summary judgment.

---

[4] After the administrative hearing, petitioner submitted an offer in compromise to respondent but withdrew it before respondent issued the notice of determination.